**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **Jane Doe (TA-00004), an individual**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Mann Ganga, LLC d/b/a** Red Roof Inn Austin - Round Rock**;**<br>**Red Roof Franchising, LLC;**<br><br>**Defendants** | **Case No.:**<br><br>**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**<br><br>**1. Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595**<br>**2. Child Abuse Victims' Rights Act, 18 U.S.C. § 2255**<br>**3. Texas Common-Law Claims** |

## INTRODUCTION

1. Plaintiff seeks relief for child sex trafficking that occurred at the Red Roof Inn Austin - Round Rock, 1990 North Interstate 35, Round Rock, Texas (the "Round Rock Red Roof"). During approximately 2019-2020, when Plaintiff was approximately fourteen to fifteen years old, an adult male she knew as "S" used the property for roughly two weeks as a base from which to advertise and repeatedly sell her for commercial sex.
2. This is not a case based solely on generalized hotel-industry knowledge. Plaintiff alleges property-specific conduct: cash room payments; acceptance of a false identity document used by another visibly young girl; repeated room changes; instructions excluding housekeeping; four visibly young girls controlled by S and his associates; adult men and different vehicles arriving throughout the stay; public loitering behind the hotel; advertisement photographs taken in the pool and lobby; and Plaintiff's childlike appearance, braces, small overnight bag, revealing clothing, and intoxicated presentation.

3. Defendant Mann Ganga, LLC ("Mann Ganga") owned, operated, managed, staffed, and received the room revenue from the Round Rock Red Roof. Defendant Red Roof Franchising, LLC ("RRF") franchised the property and, upon information and belief, required or administered brand systems implicated in this action, including training, standards, inspections, reservation channels, and the RediStay property-management system.
4. Plaintiff asserts beneficiary liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, against both Defendants; a claim under 18 U.S.C. § 2255 against Mann Ganga based on its alleged violation of 18 U.S.C. § 1591; and related Texas claims under Chapter 98 and Texas common law.

**PARTIES**

5. Plaintiff Jane Doe (TA-00004) is an adult citizen and resident of Texas. She was under eighteen during the trafficking alleged. Plaintiff will disclose her identity to Defendants under an appropriate protective order.
6. Defendant Mann Ganga, LLC is a Texas limited liability company. Public appraisal-district records identify Mann Ganga as doing business as the Red Roof Inn of Austin Round Rock. Upon information and belief, Mann Ganga owned, leased, operated, managed, staffed, employed personnel at, held the franchise for, and received room revenue from the Round Rock Red Roof during the relevant period.
7. Defendant Red Roof Franchising, LLC is a Delaware limited liability company headquartered in New Albany, Ohio. RRF grants Red Roof Inn franchises and, upon information and belief, was the franchisor and licensor for the Round Rock Red Roof during the relevant period.
8. Plaintiff pleads Defendants' precise allocation of reservation, payment, property-management, training, inspection, complaint, reporting, safety, and franchise-compliance functions in the alternative because the governing franchise agreement and internal records are principally within Defendants' possession.

## PSEUDONYM AND CONFIDENTIALITY

9. This action concerns Plaintiff's commercial sexual exploitation as a child, repeated rape, medical and mental-health treatment, and continuing safety concerns. Those matters are highly sensitive and personal, and public disclosure of Plaintiff's identity would inflict additional injury and create a substantial risk of stigma and retaliation.
10. The Fifth Circuit recognizes that a party may proceed pseudonymously when the privacy and safety interests outweigh the customary presumption of openness. *See Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981). Texas Civil Practice and Remedies Code section 98.007 also directs confidentiality for a claimant asserting a Chapter 98 claim.
11. Defendants will suffer no unfair prejudice because Plaintiff will identify herself for legitimate litigation purposes after entry of a protective order. Plaintiff requests permission to proceed anonymously and will contemporaneously seek appropriate protective relief.

## JURISDICTION AND VENUE

12. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under 18 U.S.C. §§ 1595 and 2255.
13. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the related Texas claims because they arise from the same trafficking, hotel stays, room transactions, operational conduct, and injuries and form part of the same case or controversy.
14. This Court has personal jurisdiction over Mann Ganga because it operated the subject Texas hotel and committed the alleged acts and omissions in this District. The Court has personal jurisdiction over RRF because RRF purposefully franchised and licensed a hotel in this District, entered a continuing commercial relationship governing that Texas property, administered or required systems directed to the property, and received fees tied to its operations.
15. Venue is proper under 28 U.S.C. § 1391(b)(2). The Round Rock Red Roof is in Round Rock, Williamson County, within the Austin Division of the Western District of Texas, and a substantial part of the events and omissions occurred there. Venue for the section 2255 claim is also proper because section 2255(c)(1) incorporates section 1391.

**SEX TRAFFICKING IN HOTELS: INDUSTRY KNOWLEDGE AND RECOGNIZED INDICATORS**

16. Sex trafficking is a form of human trafficking in which a person is caused to engage in a commercial sex act through force, fraud, or coercion. When the person induced to engage in commercial sex is under eighteen, federal law does not require proof of force, fraud, or coercion. 18 U.S.C. § 1591.
17. Hotels and motels have long been recognized as recurring locations used in sex-trafficking operations. Traffickers use lodging properties because a rented room provides a private location in which a victim can be housed and buyers can be brought to the victim, while the transient nature of lodging can permit a trafficking operation to move among rooms and properties.
18. Before the period in which Plaintiff was trafficked, anti-trafficking organizations had specifically addressed the hotel industry. In 2018, Polaris published a Hotels and Motels report explaining that hotels are a critical part of the infrastructure used in certain sex-trafficking operations and identifying observable trafficking indicators for hotel personnel.
19. Polaris explained that hotel employees are positioned to detect possible trafficking because of their proximity to guests and their access to guest rooms, hallways, lobbies, parking areas, and other portions of a property. Polaris cautioned that no single indicator proves trafficking, but instructed hotel personnel to consider combinations of indicators and to distinguish consensual commercial sex from circumstances showing control, coercion, or the involvement of a person under eighteen.
20. The hotel-specific indicators publicly identified by Polaris before Plaintiff's trafficking included payment for rooms in cash or by prepaid card; extended stays with few possessions; excessive foot traffic into and out of rooms; multiple rooms under one person's name; one person checking in with several females; the same female appearing with different men; evidence of drugs; controlled communications; lack of freedom of movement; lack of control over money, a telephone, or identification; and fearful, anxious, or submissive behavior.

21. Federal anti-trafficking guidance likewise recognizes that hotel personnel may encounter trafficking indicators at multiple operational touchpoints, including registration, identity verification, payment, room assignment, guest access, housekeeping, maintenance, security, and common-area observation. These ordinary hotel functions give front-desk, housekeeping, security, and management personnel repeated opportunities to observe circumstances that may require escalation or intervention.
22. Recognized hotel indicators include a guest who appears to be under another person's control; a person who defers to another person to speak; frequent or consecutive visitors to a room; a person who appears distressed, disoriented, intoxicated, fearful, or abused; repeated requests for linens or services while denying employees entry; few or no personal possessions; and circumstances suggesting that a person under eighteen is being used for commercial sex.
23. Other recognized circumstances include a visibly young person traveling with substantially older persons, cash transactions coupled with identification irregularities, multiple young females associated with a single controlling person, frequent movement between rooms, unusual efforts to keep housekeeping or other employees out of rooms, and repeated short-duration visits by persons who are not registered guests.
24. By January 2019, the American Hotel & Lodging Association had published a No Room for Trafficking resource guide directed to the lodging industry. AHLA's initiative promoted employee training, trafficking-indicator awareness, reporting protocols, and cooperation with law enforcement. These industry efforts reflected the lodging industry's recognition, before and during Plaintiff's trafficking, that hotel employees could encounter and help identify trafficking occurring at hotel properties.
25. The purpose of trafficking-awareness training is not to require hotel personnel to diagnose a crime from one ambiguous fact. It is to enable employees to recognize a convergence of facts that, taken together, indicate that a vulnerable person may be under another person's control and used for commercial sex, and then to follow appropriate escalation and reporting procedures.

26. A trafficking venture that repeatedly uses a hotel also creates recurring commercial interactions with the lodging business. Each room rental, extension, room change, deposit, payment, key issuance, housekeeping interaction, and guest-access decision can generate revenue or other value for the hotel while also producing information about the persons using the property and the manner in which they are using it.
27. Accordingly, the significance of hotel-industry knowledge is not that every hotel should infer trafficking whenever it encounters cash, young guests, revealing clothing, or visitors. Rather, industry knowledge supplies context for evaluating what hotel personnel knew or should have known when multiple recognized indicators repeatedly converged around the same young person, controlling adult, rooms, transactions, and visitor pattern.
28. In assessing knowledge under 18 U.S.C. § 1595, Plaintiff relies on the totality of the circumstances and on Plaintiff-specific and property-specific facts. General awareness that trafficking can occur in hotels does not, standing alone, establish liability. It is relevant because it informs the significance of concrete indicators actually observed, processed, or available to personnel at the subject property.
29. The indicators present during Plaintiff's trafficking closely tracked the indicators that had already been identified for the hotel industry: Plaintiff was approximately fourteen or fifteen and visibly appeared to be a child; another young girl used false identification; rooms were paid for in cash; Plaintiff carried few possessions; one adult male controlled the lodging and the girls' movements; multiple young girls were associated with the same group; adult male visitors repeatedly accessed the rooms; rooms were changed; housekeeping was kept out; and Plaintiff frequently appeared intoxicated or vulnerable.
30. The pattern was not confined to a single check-in or an isolated encounter. Plaintiff alleges that the trafficking at the Round Rock Red Roof continued for approximately two weeks, during which front-desk, housekeeping, and other personnel had repeated opportunities to observe the same group, the same visibly underage Plaintiff, repeated room use, visitor traffic, denied housekeeping, room changes, and conduct in common areas.
31. These industry-recognized indicators and the longstanding availability of hotel-specific trafficking education provide context for the property-specific allegations below. Plaintiff's

claims do not depend upon generalized hotel-industry statistics; they depend upon the repeated facts surrounding Plaintiff herself and the conduct, transactions, observations, systems, and services through which Defendants allegedly benefited from and participated in the venture that trafficked her.

## TIMELINESS

32. The TVPRA claim is timely under 18 U.S.C. § 1595(c) because this action is filed less than ten years after Plaintiff reached eighteen and less than ten years after the conduct alleged.
33. Plaintiff was a minor victim of conduct prohibited by 18 U.S.C. § 1591. Her section 2255 claim was unexpired when Congress removed the federal limitations period, and section 2255(b) now provides that there is no time limit for filing.
34. The Texas claims arise from trafficking and sexual exploitation while Plaintiff was a minor. Texas Civil Practice and Remedies Code sections 16.0045(a) and 16.001 supply an extended period and exclude minority from the calculation. The Texas claims are timely.

## FACTUAL ALLEGATIONS

### A. Plaintiff was recruited, controlled, and sold for commercial sex as a minor

35. During approximately 2019-2020, when Plaintiff was approximately fourteen to fifteen years old, she was recruited through social media by an adult male, “S”, for commercial sex trafficking.
36. Plaintiff was lured, with other minor females, to the Austin area from Houston, where S promised to help her and the other girls to make money. Once in Austin, S demanded their belongings and money. When he learned they had little or no money, he became violent. He announced that they would be taken to hotels to meet men and that he would require they each generate a specific amount of money daily.
37. S asserted ownership over the girls, prohibited them from leaving, and maintained control through violence, threats, intimidation, surveillance, restriction of movement, drugs and alcohol, and control of all commercial-sex proceeds.

38. S created and controlled online commercial-sex advertisements, including advertisements on MegaPersonals, using the alias "A" for Plaintiff. He arranged buyers, instructed Plaintiff how to interact with them, and compelled her to perform commercial sex acts for his financial benefit.
39. The federal prosecution independently corroborates key portions of Plaintiff's account. The United States Attorney's Office for the Southern District of Texas identifies Plaintiff's trafficker and reports that a federal jury convicted him of sex trafficking three minors and an adult. The government reported that S, adult male, lured three minors from Houston to the Austin area through social media and text messages; that co-conspirators provided transportation to an Austin-area hotel; that the victims posted sexually explicit commercial-sex advertisements online; and that the co-conspirators then transported the three minors to a hotel in Stafford, where S forced them to engage in commercial sex, provided drugs, and kept the proceeds. S was sentenced to life imprisonment in September 2024.
40. Plaintiff identifies the Austin-area hotel used during her trafficking as the Round Rock Red Roof alleged here. Plaintiff also reports that Homeland Security advised her that social-media evidence from the federal investigation and prosecution may be released to her attorneys. She recalls at least two implicated social-media sites and believes additional platforms are reflected in those investigative records. Plaintiff will seek those records through appropriate process and amend if necessary to conform to the evidence.
41. Plaintiff was a minor. Under section 1591, proof of force, threats, fraud, or coercion is not required when a minor is caused to engage in a commercial sex act. Those means were nevertheless present and repeatedly used against Plaintiff.

**B. The trafficking at the Round Rock Red Roof**

42. S rented rooms at the Round Rock Red Roof and used the property as a base for Plaintiff's exploitation for approximately two weeks.
43. The group included Plaintiff, approximately three other girls, S, and his associates. The girls were all visibly young. Plaintiff had braces, a soft and childlike voice, an undeveloped appearance, and only a small overnight bag. Her age, her minor status, was apparent from her face, voice, body, manner, luggage, and dependence on the adult trafficker.

44. At check-in, hotel personnel requested identification. Another girl used a fraudulent identity document to obtain the room, and the rooms were paid for in cash. Personnel accepted the document and payment despite the girls' conspicuous youth and the irregular circumstances.
45. On other occasions S handled check-in. Plaintiff, along with other trafficking victims, walked through the front entrance and were observed by front-desk personnel. Plaintiff recalls a specific front desk staff member who observed her and ignored the circumstances. Plaintiff also frequently used a rear entrance.
46. When not in a room, the girls and the trafficker would loiter behind the hotel in view of staff and passersby. The girls were repeatedly accompanied by different men associated with different vehicles.
47. S repeatedly changed rooms. He consistently denied housekeeping access and instructed personnel not to provide services inside the rooms. Housekeeping employees encountered the girls in hallways, heard their childlike voices, and were told that no assistance was needed.
48. Adult male buyers arrived throughout the stay and accessed Plaintiff through the hotel. The flow of visitors was not consistent with ordinary social or business travel, and the men generally came without luggage or registration as overnight occupants.
49. S or the girls took photographs for the commercial-sex advertisements in the hotel's pool and lobby. Plaintiff and the other girls wore heels, short shorts, minimal or revealing clothing, and at times were nearly unclothed for promotional photographs in common areas.
50. Plaintiff appeared intoxicated much of the time. Her youth, intoxication, sexualized clothing, dependence on the trafficker, repeated adult male visitors, cash payments, false identification, room changes, and denied housekeeping were simultaneously observable indicators of commercial sexual exploitation and coercive control.
51. Despite the repeated pattern, no hotel employee asked Plaintiff about her welfare, separated her from the trafficker, contacted law enforcement or child-protection authorities, documented an incident in her presence, or took reasonable steps to interrupt the exploitation.

**C. Property-specific public complaints concerning access, visibility, and non-enforcement**

52. Publicly available, property-specific guest reviews pre-dating or near the relevant period provide additional notice and discovery leads concerning access control, continuous front-desk visibility, and enforcement at the Round Rock Red Roof.

53. A September 2016 review reported that a rear entrance had no handle, its lock was broken, and the building was not secure. A December 2017 review stated that someone was always at the front desk. A February 2019 review described pervasive smoke of more than one kind throughout the hallways and complained that personnel would not address the conditions or enforce posted rules.

54. Plaintiff does not allege that these reviews independently prove sex trafficking. They are relevant because they concern the same property, the rear access Plaintiff used, the front-desk visibility Plaintiff describes, and claimed failures to enforce rules shortly before or near the alleged trafficking period. They also provide a good-faith basis to seek the underlying guest complaints, management responses, security records, and brand communications.

**D. Mann Ganga knowingly benefited and participated**

55. Mann Ganga operated the Round Rock Red Roof as a commercial lodging business and received the room revenue, cash payments, deposits, and other value generated by the trafficker's stays.

56. Mann Ganga participated in a continuing commercial relationship with the trafficker by repeatedly providing rooms, processing payment, accepting the false identification, changing rooms, permitting repeated visitor access, honoring instructions that excluded housekeeping, and continuing to provide the location and services that made the exploitation possible.

57. Mann Ganga's knowledge was plaintiff-specific. Its front-desk, housekeeping, and management personnel collectively observed or handled the cash transaction, false identity document, visibly underage girls, controlling adult, repeated room changes, denied

housekeeping, unusual visitor traffic, rear-entrance use, intoxication, common-area promotional photographs, and sexualized presentation.

58. The repeated and converging indicators support a reasonable inference that Mann Ganga knew, or at least should have known, that the venture using its rooms was causing a minor to engage in commercial sex and was using force, threats, or coercion to do so.

59. Further evidence of Mann Ganga's knowledge and participation is expected in registration cards, payment ledgers, property-management-system records, room-move history, key-card logs, surveillance video, housekeeping reports, do-not-disturb records, guest complaints, shift notes, employee schedules, incident reports, police contacts, and communications with RRF.

**E. RRF's franchise systems, benefit, and participation**

60. RRF was not merely a passive trademark owner. Public franchise disclosure materials from the relevant period describe a continuing franchise system under which a franchisee owned and operated a specified Red Roof Inn location subject to RRF's business system, standards, and operating manual.

61. Those materials state that an owner or manager was required to attend RED Advantage training; that a field trainer would visit the inn around opening; that franchisees were required to use Red Roof's RediStay property-management system and designated supporting technology; and that RRF personnel could revisit and withhold opening approval when requirements were not satisfied.

62. The franchise system also included brand reservation and sales channels, including the Red Roof website, call center, group booking, national sales, global distribution systems, third-party channels, and loyalty or direct-booking systems.

63. Upon information and belief, RRF received recurring royalties, reservation or marketing assessments, technology fees, or other value tied to the Round Rock Red Roof's room revenue and operation. It therefore knowingly benefited financially from the hotel operating venture in which Mann Ganga rented the rooms used to traffic Plaintiff.

64. Upon information and belief, RRF retained or exercised control over specific functions implicated here: brand training, property-management technology, standards, quality

assurance, inspections, reservation channels, guest complaints, incident escalation, and franchise compliance. The exact scope of control and the 2019-2020 franchise agreement are within Defendants' possession.

65. RRF knew that trafficking was a known risk in economy lodging and held itself out as providing operational, technology, and training support. On information and belief, property data, guest complaints, inspection results, rule-enforcement concerns, room-pattern data, and franchise communications concerning the Round Rock Red Roof were accessible to, transmitted to, or required by RRF.

66. RRF continued authorizing the property to operate under the Red Roof brand, providing system access and reservation channels, and collecting fees despite facts that, when combined with the plaintiff-specific observations of its franchisee and agents, made the trafficking venture known or reasonably knowable.

67. Plaintiff pleads RRF's direct participation and, in the alternative, actual agency. Mann Ganga acted as RRF's agent concerning the specific brand-controlled or brand-undertaken functions alleged, including mandated training, property-management technology, standards, inspections, reservations, guest feedback, and reporting. Plaintiff does not allege that RRF necessarily controlled every local hiring or scheduling decision.

**F. Plaintiff's injuries**

68. The trafficking caused Plaintiff physical injury, repeated sexual assault, fear, humiliation, loss of safety and bodily autonomy, and profound psychological trauma.

69. Plaintiff continues to experience anxiety, post-traumatic stress, depression, flashbacks, panic attacks, difficulty trusting others, impaired relationships, social isolation, and fear for herself and her family.

70. Plaintiff has required years of psychiatric and counseling treatment and prescribed medication. Her injuries have impaired her education, career development, employment, earning capacity, parenting security, and quality of life and will require future treatment.

## AGENCY, RESPONDEAT SUPERIOR, AND ALTERNATIVE PLEADING

71. Mann Ganga is liable for acts and omissions of its managers, front-desk staff, housekeepers, security personnel, maintenance personnel, and other employees and agents acting within the course and scope of their assigned hotel functions.
72. RRF is directly liable for its own participation and negligent undertakings. In the alternative, RRF is vicariously liable to the extent Mann Ganga or on-site personnel acted as its actual or apparent agents in the particular operations RRF controlled, required, administered, or undertook.
73. Plaintiff pleads alternative theories under Federal Rule of Civil Procedure 8(d) because the franchise agreement, management agreements, system access, reporting requirements, inspection files, and allocation of functions are primarily within Defendants' possession. Plaintiff does not seek duplicative recovery.

## CAUSES OF ACTION

### COUNT I - TVPRA BENEFICIARY LIABILITY

### 18 U.S.C. § 1595(a) - Against Mann Ganga

74. Plaintiff incorporates the preceding allegations.
75. Plaintiff was a victim of violations of 18 U.S.C. § 1591. While she was a minor, S, recruited, harbored, transported, provided, obtained, advertised, maintained, patronized, and solicited her, knowing or recklessly disregarding that she was under eighteen and would be caused to engage in commercial sex. S also used force, threats, drugs, and coercion. A federal jury later convicted S of sex trafficking minors, and he was sentenced to life imprisonment.
76. Mann Ganga knowingly benefited financially and by receiving things of value, including room revenue and occupancy-related benefits, from its participation in the venture that rented and used the Round Rock Red Roof to harbor and commercially exploit Plaintiff.
77. Mann Ganga participated through a continuous commercial relationship with S and the room-rental venture: it repeatedly supplied rooms and hotel services, processed cash payment and identification, moved rooms, permitted visitor access, honored restrictions on housekeeping, and continued the relationship as the obvious indicators accumulated.

78. Mann Ganga knew or should have known that the venture violated the TVPRA. The knowledge allegations are not generic: personnel observed a visibly underage child with braces and a childlike voice, a controlling adult, false identification, cash, room changes, excluded housekeeping, repeated adult male visitors, intoxication, sexualized clothing, and promotional photography in common areas over approximately two weeks.
79. Mann Ganga's participation and benefit caused, facilitated, or prolonged Plaintiff's trafficking and resulting injury. Plaintiff is entitled to damages and reasonable attorney's fees under section 1595(a).

**COUNT II - TVPRA BENEFICIARY LIABILITY**

**18 U.S.C. § 1595(a) - Against RRF**

80. Plaintiff incorporates the preceding allegations.
81. RRF knowingly received recurring royalties, technology, reservation, marketing, or other fees and things of value from its participation in the Red Roof franchise and hotel operating venture at the Round Rock property.
82. RRF participated through the continuing franchise relationship and the specific systems and functions it required, administered, or controlled, including training, the RediStay property-management system, standards, inspections, reservation and sales channels, guest feedback, reporting, and continued authorization to operate under the Red Roof brand.
83. The venture RRF participated in repeatedly provided rooms and hotel services that the trafficker used to violate section 1591. RRF knew or should have known of the violation through the totality of information available to the franchise system, including the franchisee's plaintiff-specific knowledge, property records, room-pattern and payment data, guest complaints, inspection and quality-assurance information, and the highly visible pattern alleged.
84. Alternatively, Mann Ganga and the on-site personnel acted as RRF's agents within the scope of brand-controlled or brand-undertaken functions. Their knowledge and participation are attributable to RRF to the extent permitted by the franchise agreement, actual practice, representations, and right of control.

85. RRF's participation and financial benefit caused, facilitated, or prolonged Plaintiff's trafficking and injuries. Plaintiff is entitled to damages and reasonable attorney's fees under section 1595(a).

**COUNT III - CIVIL REMEDY FOR PERSONAL INJURIES**

**18 U.S.C. § 2255 - Against Mann Ganga**

86. Plaintiff incorporates the preceding allegations.
87. While Plaintiff was a minor, Mann Ganga violated 18 U.S.C. § 1591(a)(2) by knowingly benefiting financially from participation in a venture that recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited Plaintiff, in knowing or reckless disregard that she was under eighteen and would be caused to engage in commercial sex.
88. Mann Ganga's actual knowledge or reckless disregard is supported by the sustained and plaintiff-specific indicators observed by its personnel and the affirmative room, payment, access, room-change, housekeeping, and common-area services it continued to provide.
89. Plaintiff suffered personal injury as a result. Under section 2255(a), she is entitled to actual damages or liquidated damages of $150,000, reasonable attorney's fees, litigation costs, punitive damages, and appropriate equitable relief.

**COUNT IV - LIABILITY FOR TRAFFICKING OF PERSONS**

**Texas Civil Practice and Remedies Code Chapter 98**

90. Plaintiff incorporates the preceding allegations.
91. S trafficked Plaintiff within the meaning of Chapter 98. He caused Plaintiff, a child, to engage in commercial sex and used violence, threats, drugs, coercion, surveillance, transportation, and control over money and movement. His federal conviction for sex trafficking minors independently confirms the criminal trafficking venture alleged here.
92. Mann Ganga intentionally or knowingly benefited from participating in the venture. It received room revenue and other value and committed overt acts designed to aid the venture, including recurring room provision, cash and identification processing, room changes,

controlled access, exclusion of housekeeping, and continued service after plaintiff-specific indicators made the trafficking known.

93. The totality of the direct observations over roughly two weeks supports actual knowledge of Plaintiff's specific trafficking, not merely generalized knowledge of hotel prostitution.

94. RRF is liable under Chapter 98 only to the extent discovery confirms that it had actual knowledge of Plaintiff's specific trafficking and itself committed, authorized, or is legally responsible for affirmative acts designed to aid the venture through its controlled or undertaken systems, continued franchise authorization, reporting decisions, or agency relationship. Plaintiff pleads that alternative theory because the relevant records are within Defendants' control.

95. Plaintiff seeks all relief authorized by Chapter 98, including actual and mental-anguish damages, reasonable attorney's fees and costs, exemplary damages as permitted by law, and joint and several liability where authorized, without duplicative recovery.

**COUNT V - NEGLIGENCE / NEGLIGENT ACTIVITY**

**(Against Mann Ganga)**

96. Plaintiff incorporates the preceding allegations and pleads this count as a negligent-activity theory and in the alternative to premises liability.

97. Mann Ganga, as owner, operator, manager, employer, and innkeeper, owed reasonable-care duties arising from its control of registration, payment, room assignment, room changes, key and visitor access, front-desk observation, housekeeping, guest assistance, security, incident response, and emergency response.

98. Mann Ganga breached those duties by accepting false identification and cash despite visible youth; repeatedly changing rooms; allowing uncontrolled buyer access; honoring instructions excluding housekeeping; failing to respond to Plaintiff's obvious minority, intoxication, and coercive control; failing to investigate or escalate the recurring pattern; and failing to use reasonable care in the active hotel operations that enabled the trafficking.

99. Those breaches proximately caused or prolonged the trafficking and caused Plaintiff's injuries.

**COUNT VI - PREMISES LIABILITY / NEGLIGENT SECURITY**

**(Pleaded in the Alternative Against Mann Ganga)**

100. Plaintiff incorporates the preceding allegations and pleads this count in the alternative to Count V.

101. Mann Ganga owned, occupied, possessed, and controlled the Round Rock Red Roof. Plaintiff was an invitee, guest, occupant, or person whose presence was known and permitted in connection with a room transaction from which Mann Ganga derived revenue.

102. The recurring use of rooms and common areas for child commercial sexual exploitation, uncontrolled adult male access, rear-door access, coercive control, drug use, and the extended visible pattern created an unreasonable risk of violent trafficking and sexual assault.

103. Mann Ganga had actual knowledge through contemporaneous observations and transactions. The danger was also foreseeable under the totality of property-specific circumstances, including the sustained pattern alleged and prior complaints concerning unsecured rear access and non-enforcement.

104. Mann Ganga failed to make the property reasonably safe, control access, investigate the visitor pattern, respond to the child-welfare risk, warn or protect Plaintiff, summon assistance, or implement other reasonable security and guest-safety measures. The breach proximately caused Plaintiff's injuries.

**COUNT VII - NEGLIGENT UNDERTAKING**

**(Against Mann Ganga and RRF)**

105. Plaintiff incorporates the preceding allegations.

106. Mann Ganga undertook front-desk, identity and payment processing, room and key control, housekeeping, guest assistance, security, incident response, and emergency functions. It performed those undertakings without reasonable care, increasing the risk and enabling the trafficking to continue.

107. RRF undertook or required brand training, property-management technology, standards, inspections, reservation support, guest-feedback handling, and franchise-compliance

functions. Having undertaken those functions, RRF was required to exercise reasonable care in their design, performance, administration, and enforcement.

108. Upon information and belief, RRF performed its undertakings without reasonable care by failing to design or enforce reasonable escalation for the combination of minor-status, false-identification, room-move, housekeeping, visitor, complaint, and property-condition indicators; by continuing system and brand support despite known deficiencies; and by failing to communicate or act on information collected through the systems it administered.

109. The negligent performance increased the risk of harm, induced continued reliance on the branded hotel's systems and staff, and caused or prolonged Plaintiff's injuries.

**COUNT VIII - NEGLIGENT TRAINING AND SUPERVISION**

**(Against Mann Ganga)**

110. Plaintiff incorporates the preceding allegations.

111. Mann Ganga employed and supervised personnel responsible for registration, identity review, cash payment, room changes, visitor access, front-desk observation, housekeeping, security, and incident response.

112. Mann Ganga owed a duty to use reasonable care in training and supervising those personnel concerning visibly underage guests, false identification, coercive control, repeated adult male visitor traffic, denied housekeeping, intoxication, sexualized common-area conduct, and appropriate escalation and reporting.

113. The conduct alleged supports a reasonable inference that Mann Ganga failed to provide or enforce adequate training and supervision. Reasonable training and supervision would have led personnel to investigate, escalate, document, summon assistance, and interrupt the trafficking rather than continue the room relationship.

114. The negligent training and supervision proximately caused or prolonged Plaintiff's trafficking and injuries.

## GROSS NEGLIGENCE, PUNITIVE DAMAGES, AND CORPORATE AUTHORIZATION

115. The conduct alleged created an extreme degree of risk of rape, violence, overdose, retaliation, and severe psychological injury to an obviously young and vulnerable child.

116. Defendants, through their employees, agents, managers, vice principals, and corporate decisionmakers, had actual awareness of the risk yet proceeded with conscious indifference by continuing the room, access, system, training, and revenue relationship.

117. Plaintiff seeks punitive or exemplary damages to the extent authorized by sections 1595 and 2255, Chapter 98, and Texas Chapter 41, and to the extent discovery establishes authorization, ratification, vice-principal participation, agency, or other prerequisites for corporate punitive liability.

## DAMAGES

118. As a direct and proximate result of Defendants' conduct, Plaintiff seeks the following categories of relief to the extent proved and legally recoverable:

a. Past and future physical pain, impairment, and loss of normal use and enjoyment of life;

b. Past and future mental anguish, emotional distress, fear, humiliation, anxiety, depression, post-traumatic stress, flashbacks, panic, and loss of bodily autonomy;

c. Past and future medical, psychiatric, psychological, counseling, pharmaceutical, and related expenses;

d. Past and future lost earnings, lost earning capacity, and educational and career disruption;

e. Damages and reasonable attorney's fees under 18 U.S.C. § 1595;

f. Actual damages or $150,000 liquidated damages, fees, costs, punitive damages, and equitable relief under 18 U.S.C. § 2255;

g. Actual, mental-anguish, statutory, and exemplary damages, fees, and costs under Chapter 98;

h. Punitive or exemplary damages as otherwise permitted by law;

i. Prejudgment and postjudgment interest; and

j. All other appropriate legal and equitable relief.

## PRAYER FOR RELIEF

119. For these reasons, Plaintiff respectfully requests that Defendants be cited to appear and answer, that Plaintiff recover judgment after trial, and that the Court award the following relief:

a. Enter judgment in Plaintiff's favor on the claims proved;

b. Award actual, compensatory, statutory, liquidated, and mental-anguish damages;

c. Award punitive and exemplary damages as permitted by law;

d. Award reasonable attorney's fees, litigation expenses, and costs;

e. Award prejudgment and postjudgment interest;

f. Permit Plaintiff to proceed under a pseudonym and enter appropriate confidentiality and protective relief;

g. Award appropriate declaratory, preliminary, and equitable relief; and

h. Grant all other relief the Court deems just and proper.

## JURY DEMAND

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury on all the issues so triable.

By: */s/ Russell Handy*
Russell Handy
Texas Bar NO. 24117976
Potter Handy LLP
1410 E. Winding Way Drive, Ste B
Friendswood, TX 77546
Phone: (415) 534-7970;
Email: serveHT@potterhandy.com
*Counsel for Plaintiff*